UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

TARENCE MARSHALL,

       Defendant.

Case No. 18-cr-20491
Hon. Matthew F. Leitman

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF No. 39)

Defendant Tarence Marshall is a federal prisoner incarcerated at FCI Morgantown.  Marshall has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"). (*See* Mot. for Compassionate Release, ECF No. 39.)  For the reasons explained below, Marshall's motion is **DENIED**.

**I**

On January 14, 2019, Marshall pleaded guilty to one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (*See* Rule 11 Plea Agmt., ECF No. 26.)  Marshall's convictions arose out of his armed drug dealing.  During a search of Marshall's home

1

that led to the charges, law enforcement officers recovered 13.66 grams of methamphetamine, 4.87 grams of Tramadol, 3.47 grams of a mixture containing heroin and fentanyl mixture, and 69.97 grams of a mixture containing tramadol and fentanyl. Officers also recovered a Springfield Armory .40 caliber firearm.

In connection with Marshall's convictions, the Court sentenced him to serve 72 months in federal prison – a term below the applicable sentencing guidelines. (*See* Judgment, ECF No. 31.) To date, Marshall has served roughly 24 months of his sentence (with credit for time served in custody prior to his plea).

Marshall petitioned the Warden of FCI Morgantown for compassionate release, and at least 30 days have elapsed from his request with no response.

Marshall filed his motion for compassionate release on June 22, 2020. (*See* Mot. for Compassionate Release, ECF No. 39.) In the motion, Marshall highlights the risk that COVID-19 poses to the nation's prison population, and he argues that his serious health conditions – diabetets and obesity – place him at increased risk for a severe outcome from a COVID-19 infection. (*See id.*) The Government opposes Marshall's motion. (*See* Resp., ECF No. 40.)

The Court held on-the-record video hearings on Marshall's motion on July 29, 2020, August 13, 2020, and August 27, 2020. Marshall's attorney also filed a supplemental brief in support of the motion for compassionate release. (*See* ECF No. 51.)

## II

Section 3582(c)(1)(A) describes when a court may grant a prisoner compassionate release:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The "applicable policy statements" from the Serntencing Commission mentioned in Section 3582(c)(1)(A) are found in U.S.S.G. § 1B1.13. The comment to that section identifies the reasons for release that may rise to the level of "extraordinary and compelling":

> Extraordinary and Compelling Reasons.— Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)    Medical Condition of the Defendant.—
>
> (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is

3

not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is—

(I)    suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)  experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   <u>Family Circumstances</u>.

(i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D)   <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

One district court has offered the following helpful explanation concerning how to apply Section 3582(c)(1)(A) in conjunction with the Sentencing Commission's guidance:

> [P]ursuant to the statutory directive in 18 U.S.C. § 3582(c)(1)(A) and in conjunction with the Sentencing Commission guidance provided in U.S.S.G. § 1B1.13, the Court must consider three issues in evaluating [a federal prisoner's] Compassionate Release application: (i) whether extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement, (ii) whether [the prisoner] is "a danger to the safety of any other person or to the community," and (iii) whether the section 3553(a) factors "to the extent they are applicable," weigh in favor of a sentence reduction. *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019); [*United States v.*] *York*, 2019 3241166, at *5 [E.D. Tenn. July 18, 2019]; *United States v. Beck*, 2019 WL 2716505, at *7 (D.N.C. June 28, 2019); *United States v. Johns*, 2019 WL 2646663, at *3-4 (D. Ariz. June 27, 2019); [*United States v.*] *McGraw*, 2019 WL 2059488, at *3 [S.D. Ind. May 9, 2019].

*United States v. Wong Chi Fai*, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019).

**III**

The Government concedes that Marshall's health conditions constitute extraordinary and compelling reasons under Section 3582(c)(1)(A).  But the Government argues that the Court should not release Marshall because doing so would be inconsistent with the relevant factors under 18 U.S.C. § 3553(a).  The Court agrees.

First, the nature and circumstances of Marshall's offense weigh heavily against release. *See* 18 U.S.C. § 3553(a)(1).  Marshall was selling drug mixtures containing fentanyl, an extremely dangerous controlled substance that is 50 to 100 times more potent than morphine. *See* https://www.cdc.gov/drugoverdose/opioids/ fentanyl.html.  Indeed, "[t]he distribution of fentanyl, one of the most deadly illegal drugs on the black market, poses an incredible threat to community members." *United States v. Simms*, 2019 WL 7049930, at *6 (N.D. Ohio Dec. 23, 2019).  And it appears that the amount of fentanyl Marshall was attempting to sell could have seriously harmed, if not killed, many people.  The lethal dose of fentanyl is generally regarded to be approximately 2 milligrams, *see United States v. Garcia*, 2020 WL 4937131, at *3 (S.D. Ohio, August 24, 2020), and, as noted above, Marshall possessed more than 70 grams of substances containing fentanyl.   The nature of Marshall's offense thus weighs significantly against release.

6

Second, Marshall's personal history and characteristics do not weigh in favor

of release. *See* 18 U.S.C. § 3553(a)(1).  Marshall's background includes prior similar

conduct.   He was previously convicted in state court for selling cocaine, and a

weapon was uncovered during the search that led to those charges.   And while

Marshall had a very difficult childhood, the Court accounted for that aspect of his

background (and other mitigating features of his background) when it imposed a

below-guidelines sentence.   While Marshall's health issues do weigh in favor of

release, nothing else in his background or characteristics persuades the Court that

release is appropriate now.

Next, the goal of imposing sufficient punishment would not be satisfied by

releasing Marshall now. *See* 18 U.S.C. § 3553(a)(2)(A).  Marshall has served only

24 months of his 72 month sentence – roughly 33%.  Two years in custody is not

sufficient punishment for the serious offense of selling fentanyl-laced drugs while

armed (after having committed a similar crime years earlier).   And while the Court

could impose a term of home confinement as a condition of supervised release if it

granted Marshall's motion, adding such confinement would still not result in

sufficient punishment for Marshall's serious crime.

In addition, releasing Marshall would not be consistent with the goal of

deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Marshall committed his current offenses

after he had already served nearly eight years in custody for his prior state drug

7

conviction, and since that sentence did not deter him, more than 24 months in custody here is necessary to achieve specific deterrence.  Likewise, given the increasing rates of fentanyl sales and overdoses, more than 24 months in custody is necessary to achieve general deterrence.

Next, releasing Marshall to home confinement could potentially subject the public to a serious risk of harm. *See* 18 U.S.C. § 3553(a)(2)(C).  As noted above, Marshall was not deterred by his prior lengthy sentence, and the Court cannot be confident that Marshall will not return to armed drug dealing if it released him now.

Finally, the goal of delivering medical care to Marshall in the most effective manner does seem to be best served by granting Marshall compassionate release. *See* 18 U.S.C. § 3553(a)(2)(D).  It appears that given the measures the Bureau of Prisons has had to take to combat COVID-19 – such as changing the meals served to inmates – Marshall is not being served food that would best help him control his diabetes.  Also, Marshall indicates that the Bureau of Prisons is not testing his blood sugar levels on a frequent enough basis.  Presumably, Marshall's diabetes could be better controlled and treated by his personal physicians in his hometown.  But while this factor weighs in favor of release, it does not outweigh the other factors – discussed at length above – that weigh against release.

For all of these reasons, the Court concludes that releasing Marshall at this point in his sentence would be inconsistent with the goals of sentencing under 18

U.S.C. § 3553(a). *See United States v. Smith*, 2020 WL 4791226 (E.D. Mich., Aug. 18, 2020) (concluding that compassionate release for a defendant convicted of selling fentanyl-laced drugs would not be consistent with Section 3553(a) factors).

## IV

Accordingly, for the reasons explained above, **IT IS HEREBY ORDERED** that Marshall's Motion for Compassionate Release (ECF No. 39) is **DENIED**. However, Marshall may renew the motion if there is a material adverse change in the COVID-19 situation at FCI Morgantown (which may implicate the application of the Section 3553(a) factors) and/or after he has served a meaningful amount of additional time on his sentence.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 8, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 8, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9761